INDEPENDENT BANKERS ASSOCIA-TION OF AMERICA, Community Bankers of Wisconsin, Community First Bank of Rosholt, State Bank of Cross Plains, Citizen State Bank of Loyal, Plaintiffs,

v.

NATIONAL CREDIT UNION ADMINIS-TRATION; Farm Credit Administration; Farm Credit Bank, Seventh District; Commissioner of Credit Unions, State of Wisconsin; Credit Union Review Board, State of Wisconsin; Coun-tryside Credit Union; Farm Credit Services of Northeast Wisconsin; Farm Credit Services of East Central Wisconsin; Farm Credit Services of Southeast Wisconsin; Farm Credit Services of North Central Wisconsin, ACA; Farm Credit Services of Madison, ACA; Farm Credit Services of Northwest Wisconsin; Farm Credit Services of Western Wisconsin, ACA; Karl F. Kappleman; Vicki Coughlin; Susan Gunn; Kenneth Sipple; Thomas O'Connell; Gordon Paulson; Wayne Slotten; and Robert Esch, Defendants.

No. 96–C–0186–C.

United States District Court,
W.D. Wisconsin.

Aug. 15, 1996.

Leonard J. Rubin, Bracewell & Patterson, L.L.P., Washington, DC, for Independent Bankers Assc. of Am.

Kim Grimmer, Solheim, Billing & Grimmer, Madison, WI, for Community Bankers of Wisconsin, Community First Bank of Rosholt, State Bank of Cross Plains, Citizen State Bank of Loyal.

Eric D. Goulian, Civil Division, U.S. Department of Justice, Washington, DC, for National Credit Union Admin., Farm Credit Administration

Marko J. Mrkonich, Oppenheimer Wolff & Donnelly, Minneapolis, MN for Farm Credit Bank, Seventh Dist., Farm Credit Services of N.E. WI, Farm Credit Services of E. Cent. WI, Farm Credit Services of S.E. WI, Farm Credit Services of N.C. WI, Farm Credit Services of Madison, Farm Credit Services of N.W. WI, Farm Credit Services of West WI, ACA.

Laura Sutherland, Asst. Atty. General, Madison, WI, for Commissioner of Credit Unions, Credit Union Review Board.

Jonathan Aked, Madison, WI, for Countryside Credit Union, Karl F. Kappleman, Vicki Coughlin, Susan Gunn, Kenneth Sipple, Thomas O'Connell, Gordon Paulson, Wayne Slotten, Robert Esch.

## OPINION AND ORDER

CRABB, District Judge.

In this civil action a group of Wisconsin banks and two trade associations with members who conduct business in Wisconsin challenge the organizational set-up of defendant Countryside Credit Union, a business that intends to operate in the same region of Wisconsin as plaintiffs. Plaintiffs argue that Countryside Credit Union's organization violates both state and federal law and will be a source of unfair competition if it is allowed to open and carry on business. They contend that Countryside Credit Union was organized in violation of Wis.Stat. §§ 186.02(1) and 186.02(2)(b), that defendant Wisconsin Commissioner of Credit Unions violated these statutes when he approved Countryside Credit Union's charter and that defendant Wisconsin Credit Union Review Board violated these statutes when it failed to intervene to prevent the Wisconsin Commissioner from approving the charter. Also, plaintiffs contend that all defendants interfered tortiously with contract in violation of Wisconsin state law.

In addition, plaintiffs contend that defendant Farm Credit Administration, a federal agency, violated the Farm Credit Act, 12 U.S.C. §§ 2001–2279bb–6, when it failed to prevent the organization of Countryside Credit Union and that defendants Farm Credit Bank, Seventh District (generally referred to as AgriBank) and the Farm Credit Associations, all of which are lending institutions regulated under the Farm Credit Act, and the individual applicants all violated the Farm Credit Act by participating in the organization of Countryside Credit Union.[1] Plaintiffs contend that the National Credit Union Administration, a federal agency, violated the Federal Credit Union Act, 12 U.S.C. §§ 1751–1795k, when it approved Countryside Credit Union's application for share insurance. Plaintiffs seek review of the actions of the Farm Credit Administration, National Credit Union Administration, AgriBank and the Farm Credit Associations under the Administrative Procedure Act, 5 U.S.C. §§ 701–706.

The case is before the court on defendants' motion to dismiss for failure to state a claim. Because plaintiffs have failed to state any federal claim upon which relief could be granted, I will grant defendants' motion to dismiss. I decline to exercise supplemental jurisdiction over plaintiffs' remaining state law claims and will dismiss those claims as well.

For the sole purpose of deciding this motion, I find that the well-pleaded allegations

---

1. Defendant Farm Credit Associations are Farm Credit Services of Northeast Wisconsin; Farm Credit Services of East Central Wisconsin; Farm Credit Services of Southeast Wisconsin; Farm Credit Services of North Central Wisconsin, ACA; Farm Credit Services of Madison, ACA; Farm Credit Services of Northwest Wisconsin; and Farm Credit Services of Western Wisconsin, ACA. Defendant individual applicants are Karl F. Kappleman; Vicki Coughlin; Susan Gunn; Kenneth Sipple; Thomas O'Connell; Gordon Paulson; Wayne Slotten; and Robert Esch.

of plaintiffs' complaint fairly allege the following facts. (The parties have submitted a number of affidavits, all of which I have ignored. On a motion to dismiss brought pursuant to Fed.R.Civ.P. 12(b)(6), only the allegations of the complaint are to be considered.)

### Allegations of Fact

On July 12, 1995, the individual applicants applied to the Wisconsin Commissioner of Credit Unions for a state credit union charter for Countryside Credit Union. At the same time the individual applicants applied to the National Credit Union Administration for federal share account insurance coverage for Countryside Credit Union. In addition, AgriBank and the Farm Credit Associations, Farm Credit System institutions that lend money solely for agricultural purposes, provided Countryside Credit Union with a total of $400,000 in start up capital. Countryside Credit Union intended to use the existing offices and personnel of the Farm Credit System institutions in order to begin operations immediately and be able to offer share accounts, consumer loans and other financial services to its members. Because Farm Credit System institutions are exempt from state and federal income taxation and therefore are able to operate at a lower expense than banking organizations engaged in a similar business, they were able to supply personnel and facilities to Countryside Credit Union at below market costs.

On January 16, 1996, plaintiffs filed a written objection with the National Credit Union Administration challenging Countryside Credit Union's application for federal share insurance. Plaintiffs argued that the organization of Countryside Credit Union violated both Wisconsin law and the Farm Credit Act because of the extensive involvement of the Farm Credit System institutions and therefore, the credit union was ineligible for federal share insurance under the Federal Credit Union Act. On February 22, 1996, plaintiffs asked the Wisconsin Commissioner of Credit Unions and the Wisconsin Credit Union Review Board to convene a hearing to hear plaintiffs' objections to the granting of a state charter to Countryside Credit Union.

The core of plaintiffs' argument was that the ties between the Farm Credit System institutions and the individual applicants were so close and intimate that it was not the individual applicants but the Farm Credit System institutions who were the real organizers and operators of Countryside Credit Union. Plaintiffs contended that, because the Farm Credit System institutions were the de facto organizers of Countryside Credit Union, Countryside Credit Union violated the provisions of Wis.Stat. §§ 186.02(1) and 186.02(2)(b) that require a credit union to be organized by seven or more individual residents of the State of Wisconsin who have a common bond. Also, plaintiffs argued that if Countryside Credit Union were granted a state charter, the Farm Credit System institutions would expand their services indirectly to include traditional banking services otherwise prohibited to them because they are limited to agricultural lending at present by the Farm Credit Act.

Plaintiffs argued also that if the Farm Credit System institutions were allowed to expand their services indirectly, plaintiffs would suffer the effects of unfair competition from the Farm Credit System institutions, the de facto organizers and managers of Countryside Credit Union. Plaintiffs pointed out that because of Countryside Credit Union's own exemption from state and federal income taxation, the financial support of the Farm Credit System institutions and the Farm Credit System institutions' access to cheaper capital than the banks and their exemption from certain regulations applicable to banks, Countryside Credit Union can offer better interest rates than the banks on loans, checking and savings share accounts, as well as lower service charges. Plaintiffs claimed that as a result they would suffer injury because many of their customers would withdraw their money from plaintiffs' banks and deposit it in Countryside Credit Union.

On February 27, 1996, without granting the plaintiffs their requested hearing, the Wisconsin Commissioner of Credit Unions issued a state charter to Countryside Credit Union. However, on March 4, 1996, the Wisconsin Credit Union Review Board inter-

vened and blocked Countryside Credit Union from conducting business or advertising and on April 16–17, 1996 it held a hearing on plaintiffs' appeal. The board has yet to issue a final decision. Finally, although the National Credit Union Administration gave initial approval to Countryside Credit Union's share insurance application, it has deferred a decision on issuance of the certificates of share insurance pending a final decision by the Wisconsin Credit Union Review Board.

## OPINION

At the outset, I note that plaintiffs have moved to amend their complaint and to strike references to certain unpublished opinions in defendants' briefs. Because plaintiffs have failed to allege any facts in their proposed amended complaint to suggest that they have an arguable basis in law for a federal claim that could withstand a motion to dismiss, amendment would be futile. *Reimann v. Murphy*, 897 F.Supp. 398, 401 (E.D.Wis.1995). Furthermore, I will deny plaintiffs' motion to strike references to certain unpublished opinions in defendants' briefs. This court has no rules prohibiting parties from citing such cases, although their value is limited.

In addition, defendants have moved to request that the court abstain from exercising its jurisdiction in this case. In support of their motion, defendants contend that two separate abstention doctrines apply. The first is the doctrine of primary jurisdiction under which plaintiffs must first present their claims to the appropriate administrative agencies before they may present their claims to this court. *See Ricci v. Chicago Mercantile Exch.*, 409 U.S. 289, 93 S.Ct. 573, 34 L.Ed.2d 525 (1973). Defendants contend that plaintiffs' claims should be heard initially by the Farm Credit Administration or, in the alternative, the Wisconsin Credit Union Review Board. However, the Farm Credit Act does not provide plaintiffs an administrative remedy and the Wisconsin Credit Union Review Board does not offer the plaintiffs a forum in which they could pursue their federal claims. Accordingly, I conclude that the doctrine of primary jurisdiction has no application in this case.

Second, defendants contend that abstention is appropriate pending the outcome of the administrative proceeding before the Wisconsin Credit Union Review Board. In general, federal abstention is appropriate only when unsettled questions of state law and policy predominate in the federal suit and will be resolved only through a comprehensive state administrative proceeding and appeal to the state court. *See Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943); *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976). Neither consideration is present in this case, which is predominantly concerned with the Farm Credit Act and the Federal Credit Union Act. Moreover plaintiffs' federal claims will not be addressed in a state administrative hearing. Therefore, abstention would be inappropriate in this case.

Plaintiffs' first claim is that defendants Farm Credit Administration, AgriBank, the Farm Credit Associations and the individual applicants violated the Farm Credit Act, 12 U.S.C. § 2001. Second, plaintiffs seek review of the Farm Credit Administration's, AgriBank's and the Farm Credit Associations' actions under the Administrative Procedure Act (APA), 5 U.S.C. § 701, contending that the actions of these defendants were arbitrary, an abuse of discretion and otherwise not in accordance with the Farm Credit Act and should be set aside pursuant to 5 U.S.C. § 706. Defendants counter by arguing that plaintiffs lack a private right of action under the Farm Credit Act.

## I. THE FARM CREDIT ACT

It appears well established that there is no private right of action available to enforce the Farm Credit Act. *Saltzman v. Farm Credit Services*, 950 F.2d 466 (7th Cir.1991); *Zajac v. Federal Land Bank*, 909 F.2d 1181 (8th Cir.1990) (*en banc*); *Harper v. Federal Land Bank*, 878 F.2d 1172 (9th Cir.1989); *Griffin v. Federal Land Bank*, 902 F.2d 22 (10th Cir.1990). Although plaintiffs try to breach this seemingly impregnable wall of precedent by arguing that it is applicable only to borrowers and not to potential

competitors such as banks, they have failed in their attempt. The Farm Credit Act dictates that institutions organized pursuant to the Act cannot charge a rate of interest below competitive market rates for similar loans made by private institutions, such as banks, to borrowers of equivalent creditworthiness and access to alternative credit. 12 U.S.C. § 2001(c). From this vague policy statement, plaintiffs would infer Congress's intent to grant a private cause of action to potential competitors of a Farm Credit System institution who are damaged by unfair competition. Plaintiffs argue also that because there are no explicit administrative notice and hearing provisions available to non-borrowers, Congress assumed that litigants such as plaintiffs would have access to the courts.

In determining whether a statute creates an implied private right of action, it is necessary to consider four factors: (1) whether the legislation is enacted to benefit the plaintiff; (2) whether there is legislative intent, explicit or implicit, to create a private right of action; (3) whether a private right of action is consistent with the legislative scheme; and (4) whether the cause of action is one traditionally relegated to the states. *Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 2087, 45 L.Ed.2d 26 (1975). Although the focus is on legislative intent, a court cannot ignore the other three factors. *Spicer v. Chicago Board of Options Exchange, Inc.,* 977 F.2d 255, 258 (7th Cir.1992). However, in the absence of a clear legislative intent to create a private right of action, a private right "simply does not exist." *Saltzman,* 950 F.2d at 468. Courts may not recognize an implied remedy without persuasive evidence that Congress intended to create one. *Spicer,* 977 F.2d at 258.

There is no evidence in either the Farm Credit Act or its legislative history of any congressional intent to give potential competitors such as banks a private right of action. In fact, plaintiffs' entire argument is based on conjecture about what Congress might have been thinking or what it could have done when it enacted the Farm Credit Act. Plaintiffs have not referred to any legislative source to support their argument that Con-

gress did not include explicit notice and hearing provisions for non-borrowers on the assumption that non-borrowers would have a private right of action. Instead, plaintiffs ask this court to speculate as to what would have been logical for Congress to assume when it enacted the Farm Credit Act. Speculation is hardly persuasive evidence of a clear legislative intent to create a private right of action under the Farm Credit Act.

Consideration of other factors supports the conclusion that no private cause of action exists. Congress enacted the Farm Credit Act solely for the benefit of farmers and other agricultural entities, not for the benefit of the banks. In fact, Congress seems to have intended that the Act would promote competition for banks by providing farmers with an alternative access to credit. A private right of action is not consistent with the legislative scheme. If plaintiffs are correct, it would follow that Congress intended that everyone except farmers has a private right of action under the Farm Credit Act. Such a conclusion is wholly inconsistent with the underlying purpose of the legislative scheme, which is intended to benefit farmers.

## II. ADMINISTRATIVE PROCEDURE ACT

No private right of action under the Farm Credit Act need exist in order for plaintiffs to pursue their claims that the Farm Credit Administration, AgriBank and Farm Credit Associations abused their discretion in violation of the Farm Credit Act. Plaintiffs can mount such a claim pursuant to the APA. *Munoz–Mendoza v. Pierce,* 711 F.2d 421, 429 (1st Cir.1983) (no need for separate private right of action given the judicial review procedures of the APA).

### A. Farm Credit Administration

The Farm Credit Administration is an independent federal government agency that acts as the federal regulatory body overseeing Farm Credit System institutions such as defendants AgriBank and the Farm Credit Associations. 12 U.S.C. §§ 2241, 2252(a). The Farm Credit Administration does not make, subsidize or guarantee loans and it possesses no supervisory authority over the

establishment or operation of credit unions. The Farm Credit Administration is vested, however, with the authority to undertake enforcement proceedings against Farm Credit System institutions and their directors and officers if it becomes aware of unsafe or unsound practices or unlawful acts. *See* 12 U.S.C. §§ 2261–76.

The APA specifically precludes judicial review of agency action to the extent that such action is committed to agency discretion by law, 5 U.S.C. § 701(a), and an agency's decision not to institute enforcement proceedings is presumptively unreviewable under § 701(a)(2). *Heckler v. Chaney*, 470 U.S. 821, 831, 105 S.Ct. 1649, 1655, 84 L.Ed.2d 714 (1985). This presumption may be rebutted where the statute provides guidelines for the agency to follow in exercising its discretion. *Id.* at 832–833, 105 S.Ct. at 1656. In the absence of such guidelines, however, the courts are left with no meaningful standard against which to judge the agency's exercise of discretion. *Id.* at 830, 105 S.Ct. at 1655. *See also Arnow v. United States Nuclear Regulatory Comm'n*, 868 F.2d 223, 233–34 (7th Cir.1989) (presumption against reviewability can be rebutted only by demonstrating that either statute in question or agency's regulations have limited agency's discretion).

In an attempt to circumvent this rule, plaintiffs contend that the Farm Credit Administration abused its discretion under the Farm Credit Act when it failed to prevent AgriBank and the Farm Credit Associations from participating in the organization of Countryside Credit Union. Plaintiffs argue that defendant Farm Credit Administration gave its approval, "tacit" or "implied," to defendants AgriBank's and Farm Credit Associations' unlawful participation in the organization of defendant Countryside Credit Union. However, as plaintiffs concede in their briefs, Farm Credit Administration approval was neither required nor given. What plaintiffs really claim is that defendant Farm Credit Administration abused its discretion when it failed to exercise its enforcement powers and restrain defendants AgriBank and Farm Credit Associations from partici-

pating in the organization of Countryside Credit Union.

Nothing in the Farm Credit Act imposes a mandatory duty upon the Farm Credit Administration to issue a "cease and desist" order whenever it finds a legal violation. To the contrary, the Farm Credit Act grants the Farm Credit Administration a wide amount of discretion. The Act provides that "if, *in the opinion* of the Farm Credit Administration, any institution in the Farm Credit System ... is violating or has violated ... a law, rule, or regulation ... the Farm Credit Administration *may* issue and serve upon the institution ... a notice of charges in respect thereof." 12 U.S.C. § 2261(a) (emphasis added). If the Farm Credit Administration determines that in fact a violation has taken place, then it *"may"* issue a cease and desist order or *"may"* order affirmative action by the institution. 12 U.S.C. § 2261(a) (emphasis added). *See also* 12 U.S.C. § 2262 (circumstances in which the Farm Credit Administration "may issue a temporary order"); 12 U.S.C. § 2263 (Farm Credit Administration "may apply" to a district court to enforce a temporary cease-and-desist order); 12 U.S.C. § 2264(a) (Farm Credit Administration authorized to initiate removal proceedings "[w]henever, *in the opinion of* " the Farm Credit Administration any director or officer of a Farm Credit institution has violated a law) (emphasis added).

The statutory language grants the Farm Credit Administration discretion in determining whether to bring charges or to impose a cease and desist order. There is no evidence that Congress limited this discretion in any way. Furthermore, because the Farm Credit Act does not contain any guidelines limiting the Farm Credit Administration's discretion, there are no standards by which a court could review the agency's decision. To undertake a judicial review of the Farm Credit Administration's decision not to bring enforcement proceedings would mean assuming regulatory functions that Congress properly granted to the Farm Credit Administration. I conclude that the Farm Credit Administration's decision not to restrain defendants AgriBank and the Farm Credit Associations

actions is unreviewable under § 701(a) of the APA.

### B. *AgriBank and Farm Credit Associations*

■ AgriBank, a Farm Credit Bank, and the Farm Credit Associations are Farm Credit System institutions established and regulated by the Farm Credit Act. 12 U.S.C. §§ 2011–2023 (establishing the Farm Credit Banks); 12 U.S.C. §§ 2071–2098 (organizing the Farm Credit Associations). Farm Credit Banks are privately owned federally chartered banks. *See* 12 U.S.C. §§ 2011, 2012. Unlike other federally chartered, commercial banks, however, Farm Credit Banks are regulated by the Farm Credit Administration, do not take deposits and must restrict their lending activity to the agricultural sector. *See* 12 U.S.C. §§ 2001, 2002, 2011–2023, 2241, 2243. Farm Credit Associations are cooperative lending organizations regulated by the Farm Credit Administration that are owned by and provide loans to their members. *See* 12 U.S.C. § 2071. Farm Credit Associations provide short and intermediate term loans to (1) farmers, ranchers and aquatic producers for agricultural or aquatic production purposes; (2) rural residents for housing financing in rural areas; (3) persons furnishing farmers and ranchers farm-related services related directly to their operating needs. 12 U.S.C. § 2075(a).

■ Plaintiffs argue that AgriBank and the Farm Credit Associations are federal agencies because they are regulated under the Farm Credit Act and work to further a government policy of providing farmers with easy access to credit. In plaintiffs' view, any entity that acts with government authority is not excepted from the definition of agency contained in 5 U.S.C. § 701(b)(1). Plaintiffs argue that AgriBank's and the Farm Credit Associations' actions are reviewable under the APA. However, an entity's actions are not reviewable unless the entity is an "agency" within the meaning of the APA, defined as "an authority of the Government of the United States, whether or not it is within or subject to review by another agency. . . ." 5 U.S.C. § 701(b)(1). For purposes of the APA, an entity comes within the definition if it has the authority to act with the sanction of government. The form the entity takes or the function it performs are not determinative. *W.B. Fishburn Cleaners, Inc. v. Army & Air Force Exchange Serv.*, 374 F.Supp. 162, 164 (N.D.Tex.1974).

■ An examination of the statutes and case law provides substantial evidence that neither of the Farm Credit System institutions is a federal agency subject to review under the APA. First, heavy regulation of Farm Credit System institutions does not transform these institutions into government agencies. *Hanna v. Federal Land Bank Ass'n of Illinois*, 903 F.2d 1159, 1162 (7th Cir.1990); *Delaigle v. Federal Land Bank of Columbia*, 568 F.Supp. 1432, 1439 (S.D.Ga. 1983). *See also Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 350, 95 S.Ct. 449, 453, 42 L.Ed.2d 477 (1974) (by itself, extensive and detailed regulation of a business does not convert the business action into that of the government). Additionally, courts have consistently held that Farm Credit System institutions are not agencies. *Hanna*, 903 F.2d at 1162 (Federal Land Bank not a federal agency under 29 U.S.C. § 621 (Age Discrimination in Employment Act)); *Federal Land Bank of Jackson in Receivership v. Federal Intermediate Credit Bank*, 727 F.Supp. 1055 (S.D.Miss.1989) (Farm Credit System institutions are not federal agencies); *Hill v. Farm Credit Bank of St. Louis*, 726 F.Supp. 1201 (E.D.Mo.1989) (Farm Credit Banks are not agents of the federal government for purposes of the Fifth Amendment to the United States Constitution). The federal government has no ownership interest in any Farm Credit System institution and takes no part in their management. *Hanna*, 903 F.2d at 1162. Congress has provided that the Farm Credit System is to be a farmer-owned cooperative, 12 U.S.C. § 2001, to be run by its borrower members. 12 U.S.C. §§ 2012, 2072 (Farm Credit Banks and Associations elect their own board of directors). It is these borrower members, acting through their board of directors and management and not the federal government that controls the day-to-day operations and business decisions of the Farm Credit Banks and Associations. 12 U.S.C. §§ 2013, 2016, 2073, 2076. Farm

Credit Banks and Associations have the power to sue and be sued, 12 U.S.C. §§ 2013, 2073, and provide for their own capitalization. 12 U.S.C. §§ 2014, 2074. In fact, the United States is not liable for the notes, bonds, debentures or any other obligation issued by the Farm Credit Banks, 12 U.S.C. § 2155(c), and it appears that any judgment or settlement against a Farm Credit System institution would be paid out of the institution's own funds and not from the United States Treasury. Nowhere does the Farm Credit Act grant either AgriBank or the Farm Credit Associations the authority to act with the sanction of government.

However, plaintiffs contend that Farm Credit System institutions are "agencies" for APA purposes because they are analogous to Federal Reserve Banks, another heavily regulated institution that has been found to be an agency under the APA. *See, e.g., Lee Construction Co., Inc. v. Federal Reserve Bank of Richmond*, 558 F.Supp. 165, 179 (D.Md.1982). In holding that a Federal Reserve Bank was an agency for APA purposes, the court relied upon the fact that the Federal Reserve Board delegated a substantial amount of its decision-making authority to the Federal Reserve Banks. *Id.* at 178. Thus, even though the Federal Reserve Board retained the power to review decisions of a Federal Reserve Banks, the Federal Reserve Banks had the authority to exercise federal agency powers and therefore had the authority to make decisions. *Id.*

Unlike the Federal Reserve Banks, Farm Credit System institutions do not exercise any of the Farm Credit Administration's enumerated powers. They cannot because, unlike the Federal Reserve Board, the Farm Credit Administration is prohibited from delegating any of its authority to Farm Credit System institutions. *See* 12 U.S.C. § 2252 (Farm Credit Administration's powers and duties). In stark contrast to the Federal Reserve Banks, Farm Credit System institutions do not exercise federal agency powers and do not have the legal authority to make decisions. Plaintiffs argue, nevertheless, that the analogy to Federal Reserve Banks should apply because AgriBank has the authority to delegate some of its powers to a Farm Credit Association. 12 U.S.C. § 2013(18). If AgriBank does not have the legal power to make decisions and therefore is not an agency for APA purposes, it is difficult to understand how a delegation of some of its corporate powers could convert the Farm Credit Associations into an agency whose acts are reviewable under the APA.

Finally, plaintiffs contend that if AgriBank and the Farm Credit Associations are not agencies under the APA, they are at least quasi-federal agencies subject to APA review. *See Coalition for Safe Transit, Inc. v. Bi–State Dev. Agency*, 778 F.Supp. 464, 467 (E.D.Mo.1991); *Seal and Co., Inc. v. Washington Metro. Area Transit Auth.*, 768 F.Supp. 1150, 1154–55 (E.D.Va.1991). Plaintiffs' argument is that, as in *Bi–State* and *Seal*, the degree of federal interest in AgriBank and the Farm Credit Associations is high and therefore they are quasi-federal agencies whose actions are reviewable under the APA. Plaintiffs' argument rests on a misreading of the case law.

Both the *Seal* and *Bi–State* cases concern contractors suing a state level agency formed through a compact by the legislatures of two or more states and approved by the Congress, as required in article I § 10 of the United States Constitution. *Seal*, 768 F.Supp at 1152; *Bi–State*, 778 F.Supp. at 467. The issue in both cases was whether Congress's approval was evidence of a sufficient federal interest to transform a state agency formed by a multi-state compact into a federal agency for the sole purpose of reviewing the agency's actions under the APA. *Seal*, 768 F.Supp at 1154–55; *Bi–State*, 778 F.Supp. at 467. There was no examination of the amount of federal interest in an institution created by the Congress to determine whether it was an agency under the APA. Instead, the courts were examining the amount of federal interest in an agency created by the states and approved by Congress. The quasi-federal exception has no application to the defendants in this case. Neither AgriBank nor the Farm Credit Associations are federal agencies whose actions are subject to APA review.

## III. NATIONAL CREDIT UNION ADMINISTRATION

 The National Credit Union Administration is an independent federal government agency responsibly for chartering, insuring, and regulating the nation's federal credit unions. *See* 12 U.S.C. §§ 1751–1795k (Federal Credit Union Act). The National Credit Union Administration is authorized to insure the member accounts of state chartered credit unions that qualify for federal insurance. 12 U.S.C. § 1781. Share insurance allows a credit union to protect individual share accounts up to $100,000. 12 U.S.C. § 1787(k). The State of Wisconsin requires state-chartered credit unions to be federally insured. Wis.Stats. § 186.34.

 The threshold issue with respect to this defendant is whether it has taken any final action within the meaning of the APA. Unless it has, it is premature to entertain plaintiffs' allegation that defendant's actions with regard to Countryside Credit Union's application for share insurance violated 12 U.S.C. § 1781 (Federal Credit Union Act). The APA provides only for judicial review of "final" agency action. 5 U.S.C. § 704. The core question in determining whether an agency's action is final is "whether the agency has completed its decision making process, and whether the result of that process is one that will directly affect" the plaintiffs. *Franklin v. Massachusetts*, 505 U.S. 788, 796–97, 112 S.Ct. 2767, 2773, 120 L.Ed.2d 636 (1992). The agency's action must not be "tentative" and its impact on the plaintiffs' day-to-day business must not only be "direct" but also "immediate." *Id.* (quoting *Abbott Lab. v. Gardner*, 387 U.S. 136, 152, 87 S.Ct. 1507, 1517, 18 L.Ed.2d 681 (1967)). In addition, the court must insure that the administrative decision-making process has reached a stage at which judicial review will not be disruptive. *Port of Boston Marine Terminal Ass'n v. Rederiaktiebolaget Transatlantic,* 400 U.S. 62, 71, 91 S.Ct. 203, 209, 27 L.Ed.2d 203 (1970).

Defendant National Credit Union Administration has given its initial approval to Countryside Credit Union's application for share insurance, but has deferred the final decision on issuance of the required federal certificates of insurance pending a final decision by the Wisconsin Credit Union Review Board on plaintiffs' administrative appeal. Plaintiffs urge this court to find the National Credit Union Administration's initial approval of Countryside Credit Union's application to be a final decision and to ignore the fact that the National Credit Union Administration has deferred its final decision. However, the fact that the National Credit Union Administration has deferred a final decision to issue the certificates makes it obvious that the National Credit Union Administration has not yet made a "final" decision. At any time the administration could either withhold or issue the certificates of insurance. It has not yet indicated which action it will take. Furthermore, plaintiffs claim no direct and immediate effect on their daily business as a result of the administration's initial decision to approve Countryside Credit Union's application. They could not make such a claim, since Countryside Credit Union needs the certificates of insurance in order to commence business and plaintiffs have not alleged that they are losing business to an institution that provides no services at present.

What plaintiffs actually claim is that if they lose their state administrative appeal the National Credit Union Administration will almost certainly issue the certificates of insurance. Plaintiffs are silent on what will transpire if they are successful in their state administrative appeal. Their fear of losing does not make the National Credit Union Administration's decision any more final. In order to find it so, I would first have to accept as fact that plaintiffs will lose their state administrative appeal and that the National Credit Union Administration will issue the certificate of insurance. This would ignore the possibility, however remote, that the National Credit Union Administration might not issue the certificates even if plaintiffs lose their state administrative proceedings. In the light of the possibilities still available to the National Credit Union Administration, it would be premature to review administrative decision-making process at this point.

■ Anticipating a finding that the National Credit Union Administration's decision was not yet final, plaintiffs argue that the National Credit Union Administration's action is still reviewable because it falls under an exception that permits judicial review of non-final agency action when the action represents a violation of a clear and specific statutory directive. *Leedom v. Kyne*, 358 U.S. 184, 187–88, 79 S.Ct. 180, 183, 3 L.Ed.2d 210 (1958). In *Leedom*, the National Labor Relations Board was prohibited by statute from certifying a unit as appropriate for collective bargaining if the unit consisted of professional and nonprofessional employees and the professional employees did not agree to inclusion in the unit by a majority vote. *Id.* at 185, 79 S.Ct. at 182. However, the National Labor Relations Board decided to certify a unit including both professional and nonprofessional employees for collective bargaining even though a majority of the professional employees did not agree to certification. *Id.* at 185–86, 79 S.Ct. at 182. The court held that even though the NLRB's decision was not final that it was reviewable nonetheless because it was in clear violation of a specific statutory directive. *Id.* at 187–88, 79 S.Ct. at 183.

In the present case, plaintiffs contend that defendant National Credit Union Administration violated 12 U.S.C. § 1781(c)(1)(C), which requires it to consider the fitness of Countryside Credit Union's management, and § 1781(c)(1)(E), which dictates that it shall determine whether Countryside Credit Union's organization is consistent with the promotion of thrift among its members and creates a source of credit for provident or productive purposes. Plaintiffs argue that both statutory provisions are violated because the management of Countryside Credit Union is unfit and that the organization of Countryside Credit Union is inconsistent with the purposes of a credit union because it increases defendant Farm Credit Associations' competitive ability unlawfully.

*Leedom* is easily distinguishable from the present case. In order to fit into the *Leedom* exception, plaintiffs would need to allege that the National Credit Union Administration had a clear and specific statutory directive to consider the fitness of Countryside Credit Union's management or the consistency with credit union purposes of Countryside Credit Union's organization and failed to do so. However, plaintiffs have not made such an allegation. They simply disagree with the National Credit Union Administration's determination that Countryside Credit Union's management is fit and that its organization is consistent with the purposes of a credit union. In the absence of a showing of a violation of a clear and specific statutory directive, the *Leedom* exception does not apply. Plaintiffs must wait until the National Credit Union Administration issues a final decision before they can pursue APA review of their claims.

## IV. STATE LAW CLAIMS

### A. *Supplemental Jurisdiction*

■ When a court considers whether to exercise supplemental jurisdiction over pendent state law claims, such as plaintiffs' claims that Countryside Credit Union's organizational set-up violates state law and the additional claim of tortious interference with contract it raises for the first time in its brief in opposition to defendants' motion to dismiss, it determines whether the claims form part of the same case or controversy as the federal law claims, 28 U.S.C. § 1367(a), and "weigh[s] the factors of judicial economy, convenience, fairness and comity...." *Wright v. Associated Insurance Companies Inc.*, 29 F.3d 1244, 1251 (7th Cir.1994). When federal claims are dismissed before trial, as is the case here, the decision to exercise supplemental jurisdiction over state law claims is a matter of discretion. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). However, in all but the rarest instance, the court is to decline. *Wentzka v. Gellman*, 991 F.2d 423, 425 (7th Cir.1993). Plaintiffs have not shown any reason to make an exception to the usual rule in this case. Accordingly, I decline to exercise supplemental jurisdiction over plaintiffs' state law claims.

## ORDER

IT IS ORDERED that the motion of defendants National Credit Union Administra-

618

tion; Farm Credit Administration; Farm Credit Bank, Seventh District; Commissioner of Credit Unions, State of Wisconsin; Countryside Credit Union; Farm Credit Services of Northeast Wisconsin; Farm Credit Services of East Central Wisconsin; Farm Credit Services of Southeast Wisconsin; Farm Credit Services of North Central Wisconsin, ACA; Farm Credit Services of Madison, ACA; Farm Credit Services of Northwest Wisconsin; Farm Credit Services of Western Wisconsin, ACA; Karl F. Kappleman; Vicki Coughlin; Susan Gunn; Kenneth Sipple; Thomas O'Connell; Gordon Paulson; Wayne Slotten; and Robert Esch to dismiss for failure to state a claim is GRANTED and that the motions of defendants to abstain jurisdiction and of plaintiffs to strike certain references to unpublished opinions and to amend their complaint is DENIED. I decline to exercise supplemental jurisdiction over plaintiffs' remaining state law claims. The clerk of court is directed to enter judgment for all defendants and close this case.