Raymond J. PERRY and Louis Zezoff, Jr., Plaintiffs,

v.

Terrence E. DELANEY, individually and in his capacity as U.S. Marshal for the Southern District of Illinois, United States Marshals Service, General Security Services Corporation, Eduardo Gonzalez, Stacia Hylton, Andrew Pierucki, Jim Marble, Charles E. Witcher, and Joseph Zak, all being sued in their capacities as individuals, Defendants.

No. 97–3001.

United States District Court, C.D. Illinois, Springfield Division.

Nov. 12, 1999.

826

J. William Lucco, Michael A. Shaheen, Lucco, Brown & Mudge, Edwardsville, IL, for Plaintiff.

Laura J. Jones, U.S. Atty., Fairview Heights, IL, for Terry Delaney.

L. Lee Smith Westervelt, Johnson, Nicoll & Keller, Peoria, IL, Thomas Walsh, U.S. Atty's Office, Chicago, IL, William M. Walsh, Sonnenschein, Nath & Rosenthal, St. Louis, MO, Robert Boonin, Butzel Long, Detroit, MI, for General Security Services.

Pamela M. Zauel, Butzel, Long, Ann Arbor, MI, for Andrew Pierucki.

### OPINION

RICHARD MILLS, District Judge.

Around the time of the first anniversary of the bombing of the Oklahoma City federal building, two Court Security Officers, who join as Plaintiffs in this case, failed to conduct proper security checks of visitors entering the East St. Louis Courthouse.

After their terminations, they bring the many constitutional and statutory claims at issue in this case.

But summary judgment must be allowed on all claims.

This cause comes before the Court on several motions: (1) Motion for Summary Judgment filed by Defendant General Security Services Corporation (GSSC); (2) Motion to Dismiss or for Summary Judgment filed by Defendant Terrence Delaney (Delaney) and the United States Marshal's Service (USMS); (3) Motion to Strike filed by GSSC; (4) Objection filed by GSSC, and (5) Plaintiffs' Motion for Leave to File Reply to Defendant's Reply.

### I.  FACTUAL BACKGROUND

Plaintiffs Raymond Perry (Perry) and Louis Zezoff (Zezoff) were employed by GSSC, a private contractor, as Court Security Officers (CSOs) at the federal courthouse in East St. Louis, Illinois pursuant to a contract between USMS and GSSC.

Jim Marble was a GSSC contract manager. Charles Witcher and Joseph Zak were GSSC supervisors. Terrence Delaney (Delaney) was the United States Marshal for the Southern District of Illinois.[1] William E. Piester (Piester) was the Chief Deputy United States Marshal for the Southern District of Illinois. The chronology of events will be set out briefly below.[2]

Though Zezoff and Perry were employees of GSSC, the actual responsibility of selection and supervision of CSOs is divided between GSSC and USMS pursuant to the contract. For example, the requirements that CSOs must meet, such as law enforcement experience, education, and physical ability, are stipulated by USMS in the contract. GSSC, however, conducts the screening of applicants to assure that they meet the requirements to be CSOs.

---

1. Because they have filed joint motions and briefs, Delaney and the USMS may be referred to collectively as "Federal Defendants".

2. Due to Plaintiffs' violations of the Local Rules, these facts are taken in large part from the factual statements filed by Federal Defendants.

In addition, the Court Security Division of the USMS provides an identification badge and other necessary security equipment. This equipment is turned in prior to leaving the courthouse at the end of the duty shifts each day. Also in connection with their employment, CSOs are automatically deputized as Special Deputy U.S. Marshals in order to fulfill their contract duties. The deputations are effective only while performing contract duties and they are automatically canceled when the CSO is terminated. Furthermore, the special deputations provide that CSOs are not federal employees and have no employment relationship with the federal government.

The contract further provides that GSSC has the responsibility to make sure that the CSOs continue to meet all the requirements specified in the contract, including adherence to the "CSO Standards of Conduct" which not surprisingly provides that CSOs shall not violate security procedures. Under the contract, failure of a CSO to meet these standards constitutes contractor nonperformance and the USMS is required to notify GSSC of any CSO conduct that falls below the standard of conduct.

It is GSSC's responsibility to discipline CSOs. Either the USMS or GSSC may request the removal of a CSO if he is disqualified for any reason, though it is ultimately GSSC's responsibility to effect the formal removal. Pursuant to the contract, GSSC must also provide an opportunity for removed CSOs to present a written response to the removal. If it is the USMS that has requested the removal of a CSO, GSSC must provide a written statement to the USMS within 15 days of the initial removal stating its position, after which the USMS can make a final determination as to its position regarding the request for the termination.

From April 8 to April 19, 1996, approximately one year after the bombing of a federal building in Oklahoma City, both the District Court and the Bankruptcy Court for the Southern District of Illinois underwent a financial audit by private contract vendors. One of the auditors complained to Stuart J. O'Hare (O'Hare), Clerk of Court for the Southern District of Illinois, about the lax security procedures and went so far as to indicate that these concerns might find their way into the auditor's report.

The specific complaint about security was that after the first day of the audit, the audit team members were allowed to pass through the south security entrance to the courthouse without having their briefcases and packages checked with the magnetometer and without being questioned. It is slightly odd in this regard that the auditors were checked by the security officers appropriately on April 8, 1996 (their first day at the courthouse for the audit) but the auditor did not voice his complaint until the day of his departure on April 19, 1996.[3] This auditor who was so upset by the lax security apparently voiced his concern only on the day that he was leaving the courthouse—which was also the date of the first anniversary of the Oklahoma City bombing.

These concerns were taken very seriously, as shown by subsequent events. O'Hare spoke with Piester about the auditor's complaint. O'Hare's security concerns were heightened because he had seen faxes regarding the necessity or appropriateness of tightening security at federal buildings around the time of the anniversary of the Oklahoma City bombing.

Piester then contacted Witcher and Marble, both GSSC supervisors, as well as Marshal Delaney. Piester also notified

---

**3.** Delaney and the USMS are a bit inconsistent regarding when the auditor voiced his concerns about security. In fact # 122, they say that O'Hare was told of the security problems by the auditor on April 19, 1996, the date that he spoke to Piester about it. But in fact # 98, referring to O'Hare's deposition, it is stated more vaguely that the concerns were voiced during the week prior to the anniversary of the Oklahoma City bombing. The April 19, 1996 date will be used on this motion for summary judgment.

USMS headquarters, specifically speaking to Ms. Stacia Hylton, Assistant Chief of the Court Security Division of the USMS. Ms. Hylton told Piester to forward to USMS headquarters a written version of the incident. Piester identified Zezoff and Perry as the CSOs who were involved in the security breaches and notified Marshal Delaney and USMS headquarters of this fact.

Piester drafted a memorandum for Delaney's signature, and this memorandum, dated April 29, 1996, was then sent to USMS headquarters. It set out the allegations of security breaches by Zezoff and Perry and additionally noted that judges had complained about lax security in the courthouse, the East St. Louis area was not very safe, and that security at the courthouse required constant vigilance and scrupulous adherence to standards.

After this memo was received at USMS headquarters, Assistant Chief Stacia Hylton notified GSSC and Pierucki on either May 2, 1996 or May 3, 1996 that USMS was requesting the removal of Plaintiffs. Pierucki then notified Marble to suspend Plaintiffs pending receipt of the formal USMS request for removal. When Pierucki told Piester of the suspension, Piester advised Pierucki that the USMS headquarters had not yet come to a final conclusion as to the necessity of requesting termination of Zezoff and Perry.

Nonetheless, at the end of their shift on May 2, 1996, Zezoff and Perry were suspended and did not receive any pay after that date. Their identification badges and equipment were gathered and turned over to Piester. On May 3, 1996, USMS sent a memo to GSSC formally requesting the removal of Zezoff and Perry because of the security breaches.

On May 7, 1996, Plaintiffs received letters from Pierucki informing them of their termination. Plaintiffs subsequently sent letters to GSSC and USMS headquarters requesting a review of their termination.

GSSC allegedly never responded, while the USMS responded that GSSC was solely responsible for the termination.

## II. PROCEDURAL BACKGROUND

Perry and Delaney originally filed their complaint on September 18, 1996. Several counts were subsequently dismissed and all individual defendants except for Delaney have now also been dismissed. The second amended complaint states in Count I a claim under the Administrative Procedure Act (APA), 5 U.S.C. § 706, alleging that Delaney in his official capacity and the USMS, "pulled" Plaintiffs' special deputations as CSOs and that this action and their ultimate removal violated Plaintiffs' procedural due process rights. Plaintiffs specifically allege that their jobs, their special deputations, or both were constitutionally protected property rights and that the terminations infringed on their liberty interest in obtaining meaningful employment. Plaintiffs also allege that the APA was violated by Delaney when he failed to follow the proper steps in removing their credentials as CSOs. In Count II, Plaintiffs allege that Delaney in his official capacity and the USMS violated the APA, 5 U.S.C. § 706, when they arbitrarily and capriciously "pulled" Plaintiffs credentials and when they failed to provide appropriate counseling prior to directing the termination of Plaintiffs. In Count, III against Delaney and the USMS, Plaintiffs allege that Delaney's pulling of their credentials violated Plaintiffs' rights under 5 U.S.C. § 558(c) because the credentials were licenses under 5 U.S.C. § 501(8) and they were revoked without the requisite notice or hearing. In Count IV, Plaintiffs allege a *Bivens* violation against GSSC, contending that GSSC acted as a government agency when terminating Plaintiffs and that GSSC violated the APA by pulling their credentials without following proper procedures. Finally, in Count V, Plaintiffs bring a *Bivens* [4] action against several in-

---

**4.** *Bivens v. Six Unknown Named Agents of* *Federal Bureau of Narcotics,* 403 U.S. 388, 91

dividual defendants, all of whom have been dismissed except for Delaney.

GSSC has moved for summary judgment. After filing a memorandum with font sizes that seemed randomly to alternate due to "computer problems," GSSC filed its corrected memorandum in support of its motion on June 25, 1999. The Federal Defendants sought and received leave to file an oversized memorandum in support of their motion to dismiss or for summary judgment. They then took full advantage of the Court's allowance of the motion for leave by filing a 70 page brief in support of their motion.

On the Plaintiffs' part, the rather simple requirement of complying with the Local Rules has similarly been a task fraught with difficulty. For example, Plaintiffs failed to timely file a response to Defendants' statement of undisputed facts. In addition, Plaintiffs, like the Defendants, also had to file a corrected brief due to "computer problems."[5] Further, Plaintiffs exceeded the page limit in their memoranda and filed it a day or so late, thereby bringing about another round of briefing as to the propriety of allowing Plaintiffs' lengthy (and tardy) brief. Many trees and much effort could be saved by simple compliance with the clear Local Rules of this Court.

## III. PRELIMINARY MOTIONS

### A. Introduction

GSSC, not wanting to miss an opportunity to file yet another motion, filed on July 16, 1999, a motion to strike Plaintiffs' corrected response to GSSC's motion for summary judgment because the response was filed on July 16, 1999, which was at least one day late and exceeded by 43 pages the page limitations set out in the

Local Rules. Plaintiffs' response brief is a 60 page consolidated response to the motion filed by Delaney and the USMS and the motion filed by GSSC.

After Plaintiffs' response was filed and GSSC brought the above mentioned motion to strike it, Plaintiffs filed a response to the motion to strike and, on that same day, two additional motions: a motion for leave to exceed the page limits in the earlier-filed corrected response and a motion to file the corrected response brief. Magistrate Judge Charles H. Evans allowed the latter two motions on July 28, 1999.

### B. Objections to Rulings of Magistrate Judge Evans

GSSC now brings its objections to Magistrate Judge Evans' rulings on the two motions for leave. GSSC argues that Judge Evans should have waited until GSSC had a chance to enlighten the Court with its arguments before the Court ruled on the motions for leave. GSSC argues that Magistrate Judge Evans' decision was clearly erroneous and contrary to law.

It is true that Plaintiffs were slightly late and it is true that Plaintiffs' brief exceeded the page limits and improperly consolidated their responses to both Defendants' motions. It is also true that Plaintiffs have offered rather puerile excuses for their tardiness, such as the excuse that they thought the Central District might have a "mailbox rule" whereby a response to summary judgment was filed when it was mailed. A quick glance at the Federal Rules of Civil Procedure might have disabused them of this notion, if indeed it was ever truly seriously entertained. *See* Fed.R.Civ.P. 5(e). Plaintiffs other excuse is that GSSC also exceeded the page limitations, apparently arguing

---

S.Ct. 1999, 29 L.Ed.2d 619 (1971).

**5.** The Court tires of the notion, invoked by both Plaintiffs and GSSC, that the ritual use of the phrase "computer problems" somehow automatically excuses all failures to comply with the rules. Though shifting responsibility

to machinery is no doubt convenient, the lawyers in this case are reminded that they remain responsible for their filings with this Court, no matter what tools they use to assist them in their efforts.

they are entitled to reciprocal leniency. However, Plaintiffs fail to note that GSSC included a certificate of compliance pursuant to Local Rule 7.1(B)(2), stating that the brief contained only 6,636 words.

Despite Plaintiffs' failures and flimsy excuses, the Court cannot conclude that Judge Evans' orders allowing leave were clearly erroneous or contrary to law. *See* 28 U.S.C. § 636(b)(1)(A). No doubt Plaintiffs should have specifically complied with the Local Rules and must achieve strict compliance in the future. But GSSC can hardly claim any prejudice resulting from the length of the response or its tardiness. In addition, there was some reason to allow the motions for leave. The extensive issues involved here have resulted in a 70 page brief from Delaney and the USMS and a 20 page brief from GSSC, thus requiring a rather lengthy response. While consolidation of the response is a poor pleading practice, it does separate the arguments fairly clearly and may have achieved some efficiency in this case. At any rate, the Court cannot conclude that Magistrate Judge Evans' rulings on the two motions for leave were clearly erroneous or contrary to law. Thus, the Court will deny the objections to Magistrate Judge Evans' rulings on Plaintiffs' motions for leave.

### C. Motion to Strike and Motion for Leave

In addition, the motion to strike filed by GSSC will be denied. While, as mentioned above, Plaintiffs have committed violations of the Local Rules, the Court will not strike the response or require more rounds of briefing on the issues raised. The violations are annoying but not terribly egregious or prejudicial to Defendants.

Finally, Plaintiffs seek to reply to the reply filed by Delaney and the USMS. No such reply is called for by the Local Rules and the motion will be denied. However, no matters outside the motions for summary judgment and motion to dismiss will be considered by the Court.

### D. Missing Factual Statements

■ Even beyond Plaintiffs' procedural blunders, however, an additional deficiency in Plaintiffs' submissions must be noted and evaluated. Local Rule 7.1 sets out quite clearly a procedure for the inclusion of factual material on motions for summary judgment. The first step is for Defendants to file a statement of undisputed facts, to which Plaintiffs are required to respond by specifically contesting or denying each numerically listed fact, with citation to discovery material to support each denial. *See* Local Rule 7.1(D). These rules are not arbitrary obstacles for unwary litigants but instead are designed to streamline the disposition of summary judgment motions.

Plaintiffs have utterly failed to comply with these rules. Plaintiffs have instead taken the liberty of simply filing an "Appendix" to their response to the summary judgment motions in which they list 6 facts without stating whether the fact is contested or admitted. Instead they "discuss" each of the listed facts. The Court will not attempt to determine which facts are disputed from those that are undisputed. This failure to follow the rules is especially puzzling in light of Plaintiffs' more complete (though not timely) compliance with the rules in their Response to GSSC's statement of facts.

The consequence of Plaintiffs' failure is that the facts listed by Delaney and USMS in their statement of facts are deemed admitted for purposes of this motion and the facts in the Plaintiffs' Appendix will not be considered. *See Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 921–22 (7th Cir.1994).

### E. The Prologue

As a last preliminary matter, the Court will strike the rather unorthodox "Prologue" found in Plaintiffs' response. While the Court encourages and applauds the exercise of imagination in legal writing, the

inclusion of a completely uninformative device such as this Prologue is much more annoying and distracting than enlightening. The Prologue relates the maudlin story of an unnamed individual who suffers various woes after being terminated from employment as a Court Security Officer. In addition to being melodramatic and insipid, this prologue is utterly irrelevant and immaterial to the issues under discussion. It is therefore stricken. The Court advises the advocates to resist the temptation to employ this type of prose in legal writing.

### IV. ANALYSIS

The Federal Defendants and GSSC bring numerous challenges to the merits and to subject matter jurisdiction. The jurisdictional issues will be addressed first. In addition, the Federal Defendants' motion to dismiss or for summary judgment will be treated as a motion for summary judgment because several volumes of material outside the pleadings have been submitted with the motion. *See* Fed. R. Civ. Pro. 12(b).

#### A. Subject Matter Jurisdiction

As mentioned above, Plaintiffs have brought several claims based on the Administrative Procedures Act (APA). They allege in Count I that the APA was violated when the USMS and Delaney in his official capacity denied Plaintiffs' procedural due process rights. They also allege in Count II that the APA was violated by the arbitrary and capricious pulling of their credentials and the failure to provide appropriate procedures. Finally, in Count III, they allege that the APA was violated because the removal of their credentials constituted the removal of a license without following proper procedures under 5 U.S.C. § 501(8).

Federal Defendants argue that this Court lacks jurisdiction to hear the APA claims for several alternative reasons: (1) Plaintiffs lack standing under the Constitution and the APA; (2) because the decision to remove Plaintiffs is committed to USMS discretion, no review under the APA is allowed; (3) Plaintiffs failed to exhaust their remedies.

The Administrative Procedures Act provides for review of agency actions that are (1) "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or (2) "contrary to constitutional right, power, privilege, or immunity." *See* 5 U.S.C. § 706(2)(A) & (B). There are several prerequisites and limitations, however, on this general right to review. For example, Plaintiffs must establish that they have standing to bring the action. *See* 5 U.S.C. § 702; *American Fed'n of Gov't Employees, Local 2119 v. Cohen,* 171 F.3d 460, 465 (7th Cir.1999). In addition, review of agency actions is precluded for those agency actions that are "committed to agency discretion by law." 5 U.S.C. § 701(a)(2). Finally, a plaintiff generally must exhaust administrative remedies prior to seeking judicial relief. *See Uniroyal, Inc. v. Marshall,* 579 F.2d 1060, 1064 (7th Cir.1978).

■ The standing requirement contains two components, one constitutional and one prudential. The constitutional aspect requires that Plaintiffs establish an injury in fact, while the prudential aspect of standing requires that the Plaintiffs be within the zone of interests protected by the relevant statute or constitutional provision. *Association of Data Processing Service Organizations, Inc. v. Camp,* 397 U.S. 150, 153, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970).

■ The injury in fact component requires that the Plaintiffs allege that they have suffered a concrete injury that is "fairly traceable" to Defendants' conduct and allege a likelihood that a favorable decision by the Court would redress Plaintiffs' injury. *See American Federation* at 466. Defendants argue that Plaintiffs fail to meet the second and third requirements. Specifically, Delaney and the USMS argue that any injury suffered by

Plaintiffs is not traceable to actions of Delaney or the USMS and that the injury would not be redressed by a favorable decision from the Court. They argue in this regard that GSSC no longer provides security at the courthouse where Plaintiffs formerly worked, so reinstatement by the USMS depends upon the actions of the current security contractor—a party not involved in this case.

■ When standing is challenged as a factual matter, a plaintiff bears the burden of coming forward with evidence that establishes to a reasonable probability that standing exists. *NLFC, Inc. v. Devcom Mid–America, Inc.*, 45 F.3d 231, 237 (7th Cir.1995).

■ Plaintiffs seem to argue that they are not requesting reinstatement but only a "clean slate" on their employment records and the right to receive their credentials again if employed as CSOs. Plaintiffs argue that these requested actions would redress their injuries. However, in their complaint, Plaintiffs request reinstatement to the same or similar positions and the seniority and benefits they have not received because of their terminations as well as a rescission of the alleged request by USMS and Delaney that Plaintiffs be removed as CSOs.

It is undisputed that the USMS requested that the Plaintiffs be terminated from their positions as CSOs. While GSSC then carried out this termination as required under the contract, the USMS requested the removal of Plaintiffs pursuant to the contract between GSSC and the USMS. Thus, the Court concludes that Plaintiffs have presented sufficient evidence to meet their burden to show causation under the constitutional standing inquiry.

In addition, Plaintiffs request reinstatement and a retraction of the memo sent by USMS to GSSC in which the USMS requested their removal from their positions as CSOs. While Defendants suggest that no relief could be awarded by USMS to Plaintiffs since GSSC no longer has the contract to provide security at the East St. Louis courthouse, the retraction at least could be provided by USMS. Since Plaintiffs allege an injury to their reputations resulting from the terminations, the requested retraction could at least partially redress their injuries. The Court concludes that Plaintiffs have presented sufficient evidence to satisfy the redressability requirement. Thus, the requirements of constitutional standing have been established in this case.

■ The prudential limitation on standing, as expressed in the APA, allows judicial review of agency actions for a "person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute ...." 5 U.S.C. § 702. The Seventh Circuit treats this language as a displacement of the traditional prudential standing requirement. See *Banks v. Secretary of Ind. Family and Social Servs. Admin.*, 997 F.2d 231, 241 (7th Cir.1993). The task for the Court is to determine the intent of Congress. *Id.*

Delaney and the USMS make much of the fact that the APA refers to a "relevant statute" rather than a constitutional provision or other rule or authority. They cite several cases involving claims brought under various *statutes* for the proposition that judicial review under the APA is limited to those situations where a plaintiff shows that she is within the class of persons who have a plausible relationship to the purpose or concerns that led Congress to pass the statute. The rather surprising negative inference that Federal Defendants wish the Court to draw is that when a plaintiff instead seeks review of an agency action that violates the Constitution, there is no "relevant statute" that is intended to benefit Plaintiffs (since Plaintiffs are proceeding under a *constitutional* provision) and no review is possible by the Court.

The Court disagrees with Defendants. The language of the APA that is quoted above allows review of agency actions for persons who have suffered "legal wrong because of agency action." Limiting review of agency actions only to those situations where a relevant statute existed could completely deny judicial review of claims by persons who allege a constitutional violation by federal agencies. This would prima facie be rather odd since it would appear to elevate statutory violations above constitutional violations.

In addition, several courts have concluded that a due process challenge is a "legal wrong" under 5 U.S.C. § 702. *See United States v. McAllister,* 969 F.Supp. 1200, 1212 (D.Minn.1997)(citing *Pennsylvania R. Co. v. Dillion,* 335 F.2d 292, 294 (D.C.Cir. 1964) and *Farmer v. Hawk,* 1996 WL 525321 *4 (D.D.C.Sept.5, 1996) (unpublished op.)). Here, Plaintiffs adequately allege a violation of due process and the prudential standing requirement of 5 U.S.C. § 702 is met in this case.

In addition to the arguments regarding standing, Defendants also contend that the USMS decision to seek removal of Plaintiffs was committed to USMS discretion and that review in this Court is therefore precluded by 5 U.S.C. § 701(a)(2), which prohibits review of agency actions that are "committed to agency discretion by law." They argue that the USMS has discretion to seek removal of unfit CSOs because there is no relevant statute to apply to evaluate the Federal Defendants' actions in this case.

■ In support of their position, Federal Defendants cite several cases involving statutes or regulations granting rather broad authority to agency decisions. *See, e.g. Lalani v. Perryman,* 105 F.3d 334, 337–38 (7th Cir.1997)(concluding that voluntary departure regulation, 8 C.F.R. § 244.2, granted wide discretion to government official). But Federal Defendants fail to note that constitutional claims are treated differently, in that when Congress wishes to preclude judicial review of con-

stitutional claims, it must express its intent to do so quite clearly. *See Johnson v. Robison,* 415 U.S. 361, 366, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974).

■ In this case, there is no evidence that Congress has expressed its clear intent that judicial review of Plaintiffs' claims was to be precluded. One of the few regulations identified by Federal Defendants is 28 C.F.R. § 0.112(c), which authorizes the USMS to deputize "employees of private security companies to provide courtroom security." But this language does not evidence an intent of Congress to preclude review of constitutional claims such as those raised by Plaintiffs.

Also, Federal Defendants argue, rather briefly and unclearly, that statements to potential employers is not final agency action. But the action alleged here is that statements may have been disseminated by Delaney or the USMS to Plaintiffs' potential employers, thereby violating Plaintiffs' due process rights. The Court finds that the statements, if actually disseminated, would be sufficiently final to constitute final agency action subject to review. *See Bennett v. Spear,* 520 U.S. 154, 177–78, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997).

Thus, the Court finds that the jurisdictional requirements have been met in this case. The final required prerequisite to review under the APA is that Plaintiffs' must have exhausted their administrative remedies. *See* 5 U.S.C. § 704; *Darby v. Cisneros,* 509 U.S. 137, 113 S.Ct. 2539, 125 L.Ed.2d 113, (1993). Here, there is no dispute that Plaintiffs sent their notices of appeal of their removals to both GSSC and the Federal Defendants. Thus, the exhaustion requirement imposed by § 10(c) of the APA is satisfied and the Court will proceed to discuss the merits of the motions filed by GSSC and Federal Defendants.

*B. Relevant Standards*

Federal Rule of Civil Procedure 56(c) provides that summary judgment "shall be

rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(c); *See Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) *see also Ruiz–Rivera v. Moyer,* 70 F.3d 498, 500–01 (7th Cir.1995). In conducting this inquiry, the evidence of the non-movant is to be believed, and "all justifiable inferences drawn in his favor." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1357, 89 L.Ed.2d 538 (1986). The moving party has the burden of providing proper documentary evidence to show the absence of a genuine issue of material fact. A genuine issue of material fact exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

A motion to dismiss should be granted when it appears beyond a doubt that the plaintiffs can prove no set of facts in support of their claims that would entitle them to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Lashbrook v. Oerkfitz,* 65 F.3d 1339, 1343 (7th Cir.1995). Under Federal Rule of Civil Procedure 12(b)(6) the well-pleaded factual allegations are accepted as true and all reasonable inferences are drawn in favor of Plaintiff. *See Swofford v. Mandrell,* 969 F.2d 547, 549 (7th Cir.1992).

Since many of Plaintiffs' claims depend upon the existence of a property or liberty interest, the Court will first address the question whether Plaintiffs have raised a genuine issue of material fact as to the existence of a property or liberty interest in this case.

### C. *Property Interests*

Plaintiffs contend that they had a property interest in their special deputations, their pocket badges and their identification cards as well as their positions themselves. Plaintiffs contend that these credentials constituted property rather than merely equipment or identification badges. Plaintiffs further argue that because the credentials were property interests, they could only be revoked after affording the Plaintiffs procedures that complied with the requirements of due process.

Property interests have been defined by the following criteria:

[t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.... Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits. *Board of Regents State Colleges v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

An entitlement is "securely and durably yours ... as distinct from what you hold subject to so many conditions as to make your interest meager, transitory, or uncertain". *Reed v. Village of Shorewood,* 704 F.2d 943, 948 (7th Cir.1983). Further, unless Plaintiffs can show that they had such an entitlement, the issue of whether they were afforded proper procedures does not arise. *See Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 541, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). Thus, it is important to note that the provision of and adherence to certain procedural steps in terminations does not by itself create a property interest. *See Loudermill,* at 541, 105 S.Ct. 1487.

In *Chabal v. Reagan,* 841 F.2d 1216 (3d Cir.1988), a United States Mar-

shal was removed from office by the President. Because his employment was defined to be at will by the governing statute, the United States Court of Appeals for the Third Circuit rejected his claim that he had a legitimate expectation to continued employment. *Chabal* at 1223.

Thus, Plaintiffs' task in this case is clear. They must point to facts that give rise to an issue of material fact as to their entitlement to the "credentials" of a Court Security Officer. Here, Plaintiffs point to several items in an effort to show a legitimate expectation or entitlement. These items consist of the following: (1) a security badge; (2) a photographic identification, and (3) a certification as a "special deputy."

However, it is clear from the facts submitted or admitted on this motion that the badge and identification are connected only to the performance of the duties as CSOs at the courthouse and that they are to be surrendered upon request. In addition, the special deputations automatically expired when employment was terminated for any reason.

In their argument, Plaintiffs seem a bit confused about relevant authority. For instance, on page 32 of their brief, Plaintiffs refer to the "7th Circuit" case of *N&N Catering Co., Inc. v. City of Chicago,* and provide as a citation the following *district* court case: 37 F.Supp.2d 1056 (N.D.Ill. 1999). In addition to the wrong citation, Plaintiffs also manage to get the holding of the *N&N Catering* case wrong when they assert that in that case the court found that a liquor license was a property interest that could not be taken away without due process. In fact, in *N&N Catering* the *district* court concluded that "[b]ecause the Licensees have failed to show that they have a property interest in their liquor licenses, their due process claim must fail." *N&N Catering* at 1073.

The Court has previously rejected the claim that Plaintiffs were third party beneficiaries of the contract between GSSC and USMS. Plaintiffs have pointed to no legitimate expectation of entitlement to any of the credentials they have identified. Plaintiffs have failed to show that the credentials were granted to Plaintiffs for a definite time nor was there any mutual understanding that Plaintiffs were entitled to deprivation of the credentials or their jobs only for cause. Thus, Plaintiffs have failed to raise any issue of material fact as to whether their positions as CSOs or the identified credentials constituted property under the Due Process Clause.

### D. Liberty Interests

█ Plaintiffs also claim that their terminations resulted in injuries to their reputations that have foreclosed job opportunities in their field. Such a claim of deprivation of liberty would require that a plaintiff allege and show that he was (1) stigmatized by the defendant's conduct, (2) the stigmatizing information was publicly disclosed by the Government, and (3) he suffered a tangible loss of other employment opportunities as a result of public disclosure. *Johnson v. Martin,* 943 F.2d 15, 16 (7th Cir.1991)(citing *Paul v. Davis,* 424 U.S. 693, 701, 96 S.Ct. 1155, 47 L.Ed.2d 405, (1976)); *Ratliff v. City of Milwaukee,* 795 F.2d 612, 625–27 (7th Cir. 1986); *See also Olivieri v. Rodriguez,* 122 F.3d 406, 408 (7th Cir.1997). The last element requires that "the circumstances of the termination must make it virtually impossible for the employee to find new employment in that field." *Lashbrook v. Oerkfitz,* 65 F.3d 1339, 1348–49 (7th Cir. 1995) (citing *Ratliff v. City of Milwaukee,* 795 F.2d 612, 625 (7th Cir.1986)).

█ In this case, Plaintiffs have presented no evidence at all that any negative information about them was disseminated by GSSC or the USMS. Plaintiffs instead argue that the dissemination requirement is "impossible" to meet and that it is enough that the information simply made its way into public forums, whether or not any proof of dissemination by the *Government* is produced.

Plaintiffs are not correct. As noted above, this Circuit requires proof of dissemination and Plaintiffs' insistence that it is hard to obtain such proof does not excuse their failure. The Court concludes that no evidence of an infringement of a liberty interest has been produced by Plaintiffs in this case. Consequently, Plaintiffs have failed to raise a genuine issue of material fact regarding their claimed deprivations of property and liberty.

The Court will now discuss the summary judgment motions in the order that the individual claims are asserted in the second amended complaint.

### E. Analysis of Individual Claims

### 1. Count I—Due Process APA Claims against Delaney and USMS

As already mentioned, Count I alleges a deprivation of constitutional property and/or liberty interests by both federal defendants. Specifically, Plaintiffs allege that 5 U.S.C. § 706(2)(B) allows review of final "agency actions" that are "contrary to constitutional right." They argue that the USMS and Delaney in his official capacity pulled their credentials and removed them from employment in violation of their due process rights to property and/or liberty.

Defendants argue that there has been no showing of a denial of a constitutionally protected property or liberty interest. As has been analyzed above, the Court agrees that Plaintiffs have not raised a genuine issue of material fact regarding their asserted property and liberty interests. Thus, summary judgment is proper as to Count I.

### 2. Count II—Arbitrary and Capricious Action under APA

In Count II, Plaintiffs state a claim under 5 U.S.C. § 706(2)(A) against Delaney and the USMS for the alleged arbitrary and capricious removal of their credentials and the failure to follow the steps for terminating a CSO that were mandated in the USMS Manual.

The arbitrary and capricious standard is very deferential to the agency, so when the agency can offer a rational explanation for its action, the action is not arbitrary and capricious. *Pozzie v. United States Dep't of Housing and Urban Dev.,* 48 F.3d 1026, 1029 (7th Cir.1995)(citing *Western & Southern Life Ins. Co. v. Smith,* 859 F.2d 407, 410 (6th Cir.1988)). Under the arbitrary and capricious standard, the Court's task is to determine "whether the [agency's] decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Pozzie* at 1029 (citing *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971)).

In this case, the request for removal of Plaintiffs was supported by a factual basis and reasons were given for the request. Plaintiffs do not raise any issue of fact to suggest that Plaintiffs did not actually allow the auditors to enter the courthouse without the required full security checks. Nor do they raise any issue of fact to suggest that O'Hare's serious concerns about the lack of security were irrational or factually baseless. Instead, the record shows that USMS and Delaney had rational grounds for the requested removal.

Even if there was an informal practice of waving employees through the security checkpoint, this alleged practice does not suffice to support the conclusion that the Federal Defendants' actions were irrational. In light of the serious concerns expressed by the auditor and by O'Hare, and the fact that security was to be tightened around the time of the anniversary of the Oklahoma City bombing, the Court cannot conclude that the action by Federal Defendants was arbitrary and capricious. Summary judgment is therefore proper as to Count II.

*3. Count III—Claim of License Denial under APA*

██ Plaintiffs also claim that their credentials constituted licenses that were taken without fair notice or hearing, thereby violating 5 U.S.C. § 558, which provides that

(c) When application is made for a license required by law, the agency, with due regard for the rights and privileges of all the interested parties or adversely affected persons and within a reasonable time, shall set and complete proceedings required to be conducted in accordance with sections 556 and 557 of this title or other proceedings required by law and shall make its decision. Except in cases of willfulness or those in which public health, interest, or safety requires otherwise, the withdrawal, suspension, revocation, or annulment of a license is lawful only if, before the institution of agency proceedings therefor, the licensee has been given—

(1) notice by the agency in writing of the facts or conduct which may warrant the action; and

(2) opportunity to demonstrate or achieve compliance with all lawful requirements.

Thus, if the credentials and special deputations are in fact licenses, they must also be "required by law" to be governed by § 558. Plaintiffs have failed to raise a genuine issue of fact regarding whether the deputations were in fact licenses and have similarly failed to show that, even if the deputation was a license, it was required by law.

A license is defined as "the whole or a part of an agency permit, certificate, approval, registration, charter, membership, statutory exemption or other form of permission." 5 U.S.C. § 551(8). A license is a "valuable asset." *Blackwell Coll. of Bus. v. Attorney General,* 454 F.2d 928, 932 (D.C.Cir.1971). In *Blackwell,* for example, the college's status as one that was approved by INS for attendance of nonimmigrant alien students was a valuable asset to the college. *Id.*

Here, however, the special deputation is not a license. Plaintiffs have identified no statute or rule that required the special deputations in order to work as CSOs. Plaintiffs have indicated that 5 U.S.C. § 566(c)-(f) demonstrates that the deputation was required, but their reliance on this section is unavailing to them and more than a little inapposite. That section refers to facilitation of rule-making committees and does not even mention licenses or CSOs anywhere.

Perhaps Plaintiffs could argue that the authority to appoint persons as special deputies pursuant to 5 C.F.R. § 0.112(c) or 5 C.F.R. § 0.151shows that the deputations are required by law. But those sections give the USMS the discretion to appoint and does not require any appointment. The contract is the instrument that provides for the special deputations. The contract provides, at § 6.1.1, that CSOs "shall receive special, limited deputation through the local U.S. Marshal and will be issued CSO credentials for identification purposes."

Thus, Plaintiffs have failed to raise any material issue of fact demonstrating that their special deputations constituted licenses subject to protection under 5 U.S.C. § 558. Plaintiffs have failed to show that the licenses were any sort of asset (as opposed to an automatically-granted aspect of their employment). In addition, even if the deputations were licenses, Plaintiffs have also failed to point to any regulation or statute to show that the "licenses" were required by law. Thus, summary judgment is proper as to Count III.

*4. Count IV against GSSC*

In Count IV, Plaintiffs allege several claims against GSSC under *Bivens.* These claims include violations of due process and violations of the APA.

GSSC argues that it is not liable on a *Bivens* theory because it is not a govern-

ment actor. It also argues that a special factor counseling hesitation to impose liability is the fact that GSSC allegedly had no control over the USMS decision to remove Plaintiffs.

The due process claims against GSSC depend upon the existence of constitutional violations. *See Davis v. Passman,* 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846, (1979). In this case the specific claims are the alleged deprivation by GSSC of property and liberty interests in Plaintiffs' jobs or credentials. As analyzed above, Plaintiffs have produced no evidence of such property or liberty interests here. Thus, the Court need not analyze GSSC's status as a government actor or any special factors counseling against the imposition of *Bivens* liability. Because Plaintiffs have produced no evidence of a constitutional violation, summary judgment on the *Bivens* claims of property and liberty deprivations asserted in Count IV is appropriate.

The remaining claim in Count IV is apparently asserted under the APA against GSSC for the alleged denial of Plaintiffs' constitutional rights and for the arbitrary termination and the removal of their credentials.

■■■ In their response, Plaintiffs do not even attempt to address GSSC's argument that it is not liable under the APA because it is not a government agency. Clearly, only *agency* decisions are subject to judicial review under the APA. *See* 5 U.S.C. § 702. Perhaps Plaintiffs mean to argue that GSSC and USMS are sufficiently intertwined that GSSC may be considered a federal agency. On the other hand, perhaps Plaintiffs are asserting that GSSC's violation of the APA may be a statutory predicate for the *Bivens* claim. These alternative arguments will be taken in turn.

Plaintiffs have presented no evidence that GSSC might be considered an agency for purposes of the APA. No evidence has been presented that GSSC had any of the powers associated with federal agencies,

such as rule-making authority or decision-making authority. *See Independent Bankers Ass'n of America v. National Credit Union Admin.,* 936 F.Supp. 605, 615 (D.C.Wis.1996). Thus, the Court concludes that GSSC is not an agency for purposes of the APA.

Plaintiffs' *Bivens* claim based on a violation of the APA is also subject to summary judgment. *Bivens* claims are asserted against individual government actors and allow for the award of monetary damages. *See, e.g., Butz v. Economou,* 438 U.S. 478, 504, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978). In contrast, the APA provides for review of agency actions and provides for non-monetary remedies only. See 5 U.S.C. § 702. There is no authority for the proposition that a *Bivens* action may be used to remedy violations of the APA, and the Court will not invent such an action, especially in light of Congress' intent that money damages are not properly sought under the APA. *See Bowen v. Massachusetts,* 487 U.S. 879, 898, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988). Summary judgment is therefore proper on this final claim asserted in Count IV.

### 5. Count V—*Bivens action against Delaney*

Plaintiffs also seek, in Count V, money damages against Delaney in his individual capacity for an alleged *Bivens* violation in "participating" in the actions taken against Plaintiffs. Delaney argues that his alleged participation in the actions taken against Plaintiffs is non-existent or too attenuated to hold him liable under *Bivens.* Specifically, Delaney argues that he did not personally participate in the decision to remove Plaintiffs' credentials or the termination decision and that his participation was limited to sending a memo to USMS headquarters. Alternatively, Delaney argues that he is protected by the doctrine of qualified immunity.

Plaintiffs argue that Delaney is liable under *Bivens* because his memo to USMS headquarters "precipitated the chain of

events" that led to the actions taken against Plaintiffs. Plaintiffs state that Delaney essentially requested that USMS take Plaintiffs' credentials and their jobs. Plaintiffs also argue that qualified immunity should not be applied in this case. However, the argument on this point is surprisingly meager. Since qualified immunity requires a statement of the clearly established law and an analysis of the specific facts of the case, a great deal more than four lines of "argument" is required to properly analyze the application of qualified immunity.

█ A *Bivens* action against Delaney requires proof that he personally participated in the alleged violation of Plaintiffs' constitutional due process rights. *See Black v. Lane*, 22 F.3d 1395, 1401 (7th Cir.1994). Direct participation in the deprivation is not required. "An official satisfies the personal responsibility requirement of section 1983 if she acts or fails to act with a deliberate or reckless disregard of plaintiff's constitutional rights, or if the conduct causing the constitutional deprivation occurs at her direction or with her knowledge and consent." *Smith v. Rowe*, 761 F.2d 360, 369 (7th Cir.1985).

█ Here, the evidence of Delaney's involvement consists of the following.[6] Delaney did not order the Plaintiffs' credentials to be taken from them nor did he recommend Plaintiffs' removal from their positions as CSOs. His involvement consisted of sending a memorandum dated April 29, 1996, to Don Horton, Chief of the Court Security Division, that set out the violations committed by Zezoff and Perry. He also states in conclusion that "[s]wift and measured action in this case may intone (sic) to the CSOs the seriousness of the USMS position and cause the CSOs to become more responsible towards their jobs." Only a few days later, on May 2, 1996, Plaintiffs credentials were removed from them and they were effectively terminated from employment.

Thus, Delaney's involvement here is not a situation where he directed a subordinate to take some action. Also, it is not a situation where the action occurred at his direction (since there is no evidence that he could direct the actions of USMS headquarters or GSSC) or with his knowledge and consent. There is no evidence that Delaney ever knew that Plaintiffs would be terminated or that he consented to their termination. Plaintiffs have also raised no factual issue as to whether Delaney acted with deliberate indifference.

Regardless of the extent of Delaney's personal participation, the *Bivens* claim against Delaney must fail for a separate reason. Since (as analyzed above) Plaintiffs have failed to produce any evidence of a denial of a constitutional right, liability under *Bivens* is precluded.

█ In addition, the Court concludes that Delaney would be protected by qualified immunity in this case. Government officials sued in their individual capacity are entitled to immunity "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). But a government official is not entitled to qualified immunity if "their conduct violates clearly established constitutional rights, such that 'a reasonable official would understand that what he is doing violates that right.'" *Hannon v. Turnage*, 892 F.2d 653, 656 (7th Cir.1990)(quoting *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). Plaintiff bears the burden to establish that the law is clearly established. *See Lenea v. Lane*, 882 F.2d 1171, 1177 (7th Cir.1989).

Here, Plaintiffs have offered virtually no argument to support their opposition to Defendants' argument that Delaney is entitled to qualified immunity. They have also not come close to meeting their bur-

---

**6.** These facts are taken from Delaney and USMS's statement of facts due to Plaintiffs'

failure, explained above, to comply with the Local Rules.

den of showing any clearly established law. Even if they had shown clearly established law, it is clear that Delaney is protected by qualified immunity in this case. He sent a memorandum setting out the reported violations by Perry and Zezoff. He did not order their termination, and he did not even explicitly suggest their termination. He may have thought that discipline would be in order for the violations, but it cannot be said that a reasonable official would have understood that the sending of the memorandum violated Plaintiffs' constitutional rights.

### V. CONCLUSION

For all these reasons, summary judgment on all claims is proper in this case. Because there is no genuine issue of material fact as to the alleged deprivation of property or liberty, summary judgment on Count I is proper. Count II fails because Plaintiffs have presented no evidence raising a genuine issue of fact as to the alleged arbitrary and capricious actions by the Federal Defendants. Also, Count III fails because no evidence has been presented showing that the credentials constituted licenses that were "required by law." Count IV fails because of the lack of a showing of the violation of a constitutional right, because the GSSC is not a government agency and because a *Bivens* claim is not properly brought for violations of the APA. Finally, Count V fails because Delaney did not personally participate in the alleged violations and because he is protected by qualified immunity.

*Ergo,* the motion by GSSC for summary judgment is ALLOWED. The motion by the Federal Defendants for summary judgment is also ALLOWED, while their motion to dismiss is DENIED as moot. The motion to strike filed by GSSC is DENIED. The Objection filed by GSSC is DENIED. The motion for leave to reply filed by Plaintiffs is also DENIED.